**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IMMERSION CORPORATION | |
| vs. | Civil Action No. _____ |
| APPLE INC., | |
| AT&T INC., and | **JURY TRIAL DEMANDED** |
| AT&T MOBILITY LLC | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Immersion Corporation ("Immersion") brings this action for patent infringement against Apple Inc., AT&T Inc., and AT&T Mobility LLC (collectively, "Defendants"), and alleges as follows:

### NATURE OF THE ACTION

1.      Immersion is a leading innovator and developer of haptic technology.  Since its founding in 1993, Immersion has developed and licensed haptic products and intellectual property across diverse industries and applications, including, for example, medical devices, medical training simulations, game systems and controllers, automotive devices, touchscreen controls for appliances and office equipment, and mobile electronic devices.  In recent years, a primary focus of Immersion's business has been developing products for the mobile electronic device industry, including software products for implementing advanced haptic effects, including pressure-enabled haptic effects, on mobile electronic devices.

2.      "Haptics" refers to the science of touch.  Haptics in consumer electronic devices provides touch or tactile sensations to the users of electronic devices.  Because of the importance of the sense of touch to the way people perceive their surroundings and the things with which they interact, haptics can greatly enhance the usability and functionality of consumer electronic

devices.  Haptic sensations in such devices are typically created by actuators, or motors, which create a vibration.

3.      When haptics is implemented on a mobile phone (for example, through Immersion's TouchSense® software), users can experience a vibrating force as they push a virtual button, select a graphical object, scroll through a list, or receive a message.  As another example, when haptics is implemented in a laptop computer (for example, in the laptop's touchpad), users can experience a vibrating force when they press down on the touchpad. Haptics may, for example, confirm or provide cues that an action has been performed. Predefined haptic effects may be incorporated in an electronic device to allow certain haptic effects to be associated with certain actions and allow applications to access and use the predefined haptic effects library.  As another example, when implemented in a mobile game, users can feel an engine reverberation, the crack of the bat meeting the ball, or the release of a slingshot.  The presence of haptics in electronic devices provides a new level of user interaction through haptic cues, which provide users with a more rich and immersive user experience.

4.      In electronic devices, haptic effects are typically managed and controlled by embedded software, and integrated into device user interfaces and applications via embedded control software APIs.  Applications running on a mobile electronic device call these APIs to implement the haptic effects.  These APIs in turn cause specific haptic effect commands to be sent to an actuator in the electronic device, resulting in the associated haptic feedback effect. More sophisticated applications may provide a variety of tactile sensations.  For example, user actions may trigger different haptic effects and thus communicate different types of information. This information may be conveyed by varying the type, duration, intensity, or frequency of the

tactile sensations.  This enables the creation of different haptic effects so that users can easily distinguish, for example, a calendar alert from a text message alert or an incoming call.

5.      Pressure-enabled haptics is a form of haptics.  For example, pressure-enabled sensors may measure the pressure levels of contacts on the touchscreen.  Separate haptic effects may be configured for different interactions with graphical objects, for example, touching graphical objects on the touchscreen and applying pressure at varying pressure levels.  Different haptic effects may be provided depending on the pressure level of the contact on the touchscreen in relation to predefined pressure thresholds.

6.      Haptics, including pressure-enabled haptics, can be incorporated into many features of a smartphone or laptop.  For example, it is especially useful in electronic devices containing touchscreens, which tend to have very few physical buttons.  For example, a particular haptic effect may be used when the pressure level of the contact on the touchscreen is less than a first pressure threshold, or a particular haptic effect may be used when the pressure level of the contact on the touchscreen is between the first pressure threshold and a second pressure threshold.  As another example, haptic effects in a pressure-enabled mobile device may be provided depending on whether certain conditions are met by the user's interaction with the pressure-enabled touch sensor.  For example, a user may interact with a displayed graphical object on the touchscreen by applying pressure to the touchscreen.  The pressure-enabled touch sensor may receive contact data from the interaction and the mobile device may determine a gesture based on the contact data.  As an example, if the pressure is greater than a pressure threshold and the change in pressure is greater than a change in pressure threshold and a time interval has elapsed, a haptic effect may be provided.  In this way, the user's intended interaction

may be accurately determined based on contact data from the pressure-enabled touch sensor, and the user experience enhanced.

7.     Haptic effects, including pressure-enabled haptics, may also be used to confirm receipt of a command and indicate that a command is unrecognized.  For example, a user may issue a command by interacting with a graphical object on a touchscreen, *e.g.*, by applying a certain level of pressure to the touchscreen.  If the user input is recognized and the command is determined, the mobile electronic device may provide a haptic effect confirming receipt of the command.  Otherwise, the mobile electronic device may provide a second haptic effect.  The second haptic effect may indicate, for example, that the user input is unrecognized or that a corresponding command was not found.  Haptic feedback confirming receipt of a command provides a more realistic and responsive user experience, informing the user via tactile sensation whether the user's input was recognized and the command was determined.

8.     Immersion's hard work and ingenuity in the field of haptics has resulted in extensive intellectual property protection for Immersion's innovations.  This protection includes more than 2,100 world-wide granted and pending patents, including the patents-in-suit.

9.     Haptics play a central role in Defendants' products.  For example, important features of the current generation of Apple iPhones are promoted under the names "3D Touch" and "Taptic Engine."  These features of the Apple iPhone 6s and 6s Plus provide haptic feedback, including feedback based on pressure-sensitive interactions with the touch screen.  Apple and AT&T tout this functionality on their websites.  *See, e.g.*, Apple, iPhone 6s – 3DTouch, http://www.apple.com/iphone-6s/3d-touch/ (3D Touch):

- 4 -

# 3D Touch.
# The next generation of Multi-Touch.

iPhone 6s introduces an entirely new way to interact with your phone. For the first time, iPhone senses how much pressure you apply to the display. In addition to familiar Multi-Touch gestures like Tap, Swipe, and Pinch, 3D Touch introduces Peek and Pop. This brings a new dimension of functionality to the iPhone experience. And when you use 3D Touch, your iPhone responds with subtle taps. So not only will you see what a press can do — you'll feel it.



**Watch the film** ▶

*See also, e.g.,* http://www.apple.com/iphone-6s/technology/ (Taptic Engine):



### All-new Taptic Engine

iPhone 6s gives you real-time feedback both onscreen and in the form of subtle taps from the Taptic Engine. These responses correspond to how deeply you're pressing the display, and they let you know what actions you're performing and what you can expect to happen.

*See also, e.g.*, https://www.att.com/cellphones/iphone/iphone-6s.html (3D Touch advertised by AT&T):



10.     Similarly, important haptic features of the Apple MacBook, Apple MacBook Pro 13-inch, and Apple MacBook Pro 15-inch are promoted under the names "Force Touch" and "Taptic Engine."     Apple    touts    this    functionality    on    its    website.     *See* http://www.apple.com/macbook/design/:

## The Force Touch trackpad.
## Press a little deeper, do a lot more.

The new Force Touch trackpad may look like other trackpads on the surface, but underneath it's unlike anything that's existed before. Force sensors detect how much pressure you're applying, and the new Taptic Engine provides a click sensation when you press anywhere on the surface. Now the click that once was a single, mechanical function is just the start of what you can do with Force Touch. The sensory capabilities of the Force Touch trackpad allow you to tell your MacBook what you want it to do based on subtle differences in the amount of pressure you apply. This makes it possible to perform a variety of different actions in different apps, all on the same surface. And it can respond with haptic feedback you can actually feel, making your MacBook more usable and personal than ever before.



**Taptic Engine**

Traditional trackpads use a "diving board" mechanism, which requires room underneath for the downward motion of a click and makes it harder to click the part of the surface closest to the keyboard. With the Force Touch trackpad, force sensors detect your click anywhere on the surface and move the trackpad laterally toward you, although the feel is the same familiar downward motion you're accustomed to in a trackpad. The Taptic Engine also provides haptic feedback, so instead of just seeing what's happening on the screen, you can feel it, too. The trackpad sends a tangible response to your fingertip when you perform certain tasks, like aligning annotations on a PDF.

CAPACITIVE GLASS SURFACE

TAPTIC ENGINE

FORCE SENSORS

11.     Defendants are capitalizing on Immersion's innovation and success by selling mobile devices that infringe Immersion's patents.  Defendants are utilizing Immersion's patented inventions without license or authority from Immersion.  Immersion has brought this action to remedy Defendants' infringement.

**PARTIES**

12.     Immersion is a Delaware corporation with its principal place of business located at 50 Rio Robles, San Jose, CA 95134.  Immersion is the owner of the intellectual property rights at issue in this action. As noted above, Immersion is a leading innovator and developer of haptic feedback technologies.  Since its founding in 1993, Immersion has developed and licensed haptic feedback products and intellectual property across diverse industries and applications, including mobile electronic devices.

13.     Defendant Apple Inc. ("Apple") is a California corporation with its principal place of business at 1 Infinite Loop, Cupertino, CA 95014.

14.     Apple makes, uses, offers to sell, sells, and imports into the United States mobile electronic devices, including the Apple MacBook, Apple MacBook Pro 13-inch, Apple MacBook Pro 15-inch, Apple iPhone 6s, and Apple iPhone 6s Plus.  Apple maintains one or more retail stores and numerous employees in this judicial district.  Apple's retail stores in this

judicial district offer to sell and do sell infringing devices, including the Apple MacBook, Apple MacBook Pro 13-inch, Apple MacBook Pro 15-inch, Apple iPhone 6s, and Apple iPhone 6s Plus.

15.     Defendant AT&T Inc. is a Delaware corporation with its principal place of business at 208 S. Akard Street, Dallas, TX 75202.  Defendant AT&T Mobility LLC is a Delaware limited liability company with its principal place of business at 1025 Lenox Park Boulevard NE, Atlanta, GA 30319.  AT&T Mobility LLC is a wholly-owned subsidiary of AT&T Inc.  Together, AT&T Inc. and AT&T Mobility LLC will be referred to as "AT&T."

16.     AT&T uses, offers to sell, sells, and imports into the United States mobile electronic devices, including the Apple iPhone 6s and Apple iPhone 6s Plus.  AT&T maintains one or more retail stores and numerous employees in this judicial district.  AT&T's retail stores in this judicial district offer to sell and do sell infringing devices, including the Apple iPhone 6s and Apple iPhone 6s Plus.

## JURISDICTION AND VENUE

17.     This is an action for patent infringement arising under the patent laws of the United States of America, 35 U.S.C. § 1, et seq., including 35 U.S.C. § 271.  This Court has subject matter jurisdiction over the matters pleaded herein under 28 U.S.C. §§ 1331 and 1338(a).

18.     This Court has personal jurisdiction over Defendants because, among other reasons, Defendants have done business in this District, have committed and continue to commit acts of patent infringement in this District, and have harmed and continue to harm Immersion in this District, by, among other things, using, selling, and offering for sale infringing products in this District.  Moreover, the Defendants have placed infringing products into the stream of

commerce by shipping those products into this District or knowing that the products would be shipped into this District.

19.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1400(b) and 1391(b)-(c) because, among other reasons, Defendants are subject to personal jurisdiction in this District and have committed acts of infringement in this District, including selling and distributing infringing products in this District.

20.     Joinder of Defendants in this action is proper under 35 U.S.C. § 299 because, among other reasons, Immersion asserts a right to relief against Defendants with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of common accused products, including the Apple iPhone 6s and Apple iPhone 6s Plus, and questions of fact common to all Defendants will arise in this action.

### FIRST CLAIM FOR RELIEF FOR PATENT INFRINGEMENT

### (U.S. Patent No. 8,749,507)

21.     Immersion incorporates by reference paragraphs 1 through 20 as if set forth here in full.

22.     Immersion is the owner of the entire right, title, and interest in and to U.S. Patent No. 8,749,507 (the "'507 patent"), entitled "Systems and Methods for Adaptive Interpretation of Input from a Touch-Sensitive Input Device," which was duly issued on June 10, 2014.  A copy of the '507 patent is attached as Exhibit A.

23.     The '507 patent, in general, describes advances in providing haptic feedback in certain mobile electronic devices such as mobile phones that receive contact data from interactions with a touchscreen.  The '507 patent teaches, among other things, systems and

methods in which the mobile electronic device determines a pressure and a change in pressure based on contact data.  The mobile electronic device outputs a haptic effect if the pressure is greater than a pressure threshold, the change in pressure is greater than a change in pressure threshold, and an interval has elapsed. Further details of the invention are described in the specification and the claims.

24.     Defendants have infringed and are currently infringing the '507 patent, in violation of 35 U.S.C. § 271, by, among other things, making, using, offering for sale, selling, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '507 patent, including without limitation the Apple iPhone 6s and Apple iPhone 6s Plus.

25.     Based on the information presently available to it, Immersion alleges that at least the following apparatuses, products, devices, processes, methods, acts, or other instrumentalities infringe or are covered by claims of the '507 patent:  the Apple iPhone 6s and Apple iPhone 6s Plus.  Immersion makes this preliminary identification of infringing apparatuses, products, devices, processes, methods, acts, or other instrumentalities without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise.

26.     Apple, AT&T, and their customers directly infringe the '507 patent using the Apple iPhone 6s and Apple iPhone 6s Plus.  The accused devices receive contact data from a user's finger contacting the touch screen of the devices.   The accused devices determine interactions with displayed graphical objects.  Then, the accused devices determine a "Peek" or "Pop" press using pressure, change in pressure, and timing interval information.   Additional

details relating to the accused devices and their infringement are in the possession of Defendants.

27.     Defendants also indirectly infringe the '507 patent.  Defendants are aware of the '507 patent at least from the date of this Complaint.  Additionally, on information and belief, Defendants were aware of the '507 patent before the date of this Complaint, including without limitation through Defendants' knowledge of Immersion and Immersion's disclosure of its patents on its website (formerly located at http://www.immersion.com/haptics-technology/patents/index.html and currently located at http://www.immersion.com/legal/ #patents).  For example, Immersion's website specifically lists the '507 patent.  Additionally, on information and belief, the relevance of Immersion's leading portfolio of haptic patents is well-known to Defendants.  *See, e.g.*, http://www.benzinga.com/analyst-ratings/analyst-color/13/08/3816746/immersion-others-could-get-a-boost-when-haptics-market-r  ("When it comes to haptics, Immersion is usually the first company that comes to mind.").  Defendants knew that the Apple iPhone 6s and Apple iPhone 6s Plus infringed the '507 patent, or at a minimum believed there was a high probability that the Apple iPhone 6s and Apple iPhone 6s Plus were covered by the '507 patent, but willfully blinded themselves to Immersion's patent and the infringing nature of the Apple iPhone 6s and Apple iPhone 6s Plus.

28.     Defendants induced and are actively inducing infringement of the '507 patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting others to directly make, use, offer for sale, sell, and/or import within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '507 patent, including without limitation the Apple iPhone 6s and Apple iPhone 6s Plus.  For example, Defendant Apple provides directions,

instruction manuals, guides, and/or other materials that encourage and facilitate infringing use by others.  *See, e.g.*, http://www.apple.com/iphone-6s/3d-touch/;  http://www.apple.com/iphone-6s/technology/; http://help.apple.com/iphone/9/.  Defendant AT&T similarly provides directions, instruction manuals, guides, and/or other materials that encourage and facilitate infringing use by others.  *See, e.g.*,  http://www.att.com/wireless/iphone/;  https://www.att.com/cellphones/ iphone/iphone-6s.html;  http://www.att.com/esupport/iphonefaqs.jsp.  The Defendants have sold and are selling these products with the knowledge and intent that customers who buy the products will use the products for their infringing use and therefore that customers have been and are directly infringing the '507 patent.

29.     Defendants have contributorily infringed and are currently contributorily infringing the '507 patent, in violation of 35 U.S.C. § 271(c), by, among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products or components of products which constitute a material part of the '507 patent, knowing that such products and/or components are especially made or especially adapted for use in the infringement of the '507 patent, and not staple articles or commodities of commerce suitable for substantial noninfringing use.

30.     Defendants' infringement of the '507 patent has been and continues to be willful and deliberate.  Despite knowledge of the '507 patent, Defendants have acted and are acting despite an objectively high likelihood that their actions constitute patent infringement.  This objective risk was and is known to the Defendants, and is also so obvious that it should have been known to the Defendants.

31.     As a direct and proximate result of Defendants' infringement of the '507 patent, Immersion has suffered and will continue to suffer irreparable injury for which there is no

adequate remedy at law.  Immersion has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## SECOND CLAIM FOR RELIEF FOR PATENT INFRINGEMENT

### (U.S. Patent No. 7,808,488)

32.     Immersion incorporates by reference paragraphs 1 through 20 as if set forth here in full.

33.     Immersion is the owner of the entire right, title, and interest in and to U.S. Patent No. 7,808,488 (the "'488 patent"), entitled "Method and Apparatus for Providing Tactile Sensations," which was duly issued on Oct. 5, 2010.  A copy of the '488 patent is attached as Exhibit B.

34.     The '488 patent, in general, describes advances in providing haptic feedback in certain mobile electronic devices such as mobile phones that have, among other things, a touchscreen and an actuator.  The '488 patent teaches, among other things, systems and methods in which the mobile electronic device displays on the touchscreen a graphical object.  When the user touches the graphical object on the touchscreen using his or her finger, a signal is generated indicating an object contacting the touchscreen and a pressure of the contact.  The mobile electronic device generates an actuator signal to the actuator to output a haptic effect based on the user's interaction with the graphical object on the touchscreen.  Haptic effects are output based on, among other things, the pressure of the contact in relation to pressure thresholds.  Further details of the invention are described in the specification and the claims.

35.     Defendants have infringed and are currently infringing the '488 patent, in violation of 35 U.S.C. § 271, by, among other things, making, using, offering for sale, selling, and/or importing within this judicial district and elsewhere in the United States, without license

or authority, products and/or processes falling within the scope of one or more claims of the '488 patent, including without limitation the Apple iPhone 6s and Apple iPhone 6s Plus.

36.     Based on the information presently available to it, Immersion alleges that at least the following apparatuses, products, devices, processes, methods, acts, or other instrumentalities infringe or are covered by claims of the '488 patent:  the Apple iPhone 6s and Apple iPhone 6s Plus.  Immersion makes this preliminary identification of infringing apparatuses, products, devices, processes, methods, acts, or other instrumentalities without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise.

37.     Apple, AT&T, and their customers directly infringe the '488 patent using the Apple iPhone 6s and Apple iPhone 6s Plus.  When a user presses at a pressure level to trigger a "Peek" interaction on a software-generated object on the touch screen of the accused devices, the processor receives a signal indicating the application of pressure from a user's finger contacting the touch screen, and transmits an actuator signal to the actuator in the accused devices (e.g., the "Taptic Engine"), causing the actuator to output a first tactile sensation.  Similarly, when the user then presses at a greater pressure level to trigger a "Pop" interaction, a different, second tactile sensation is produced.  Additional details relating to the accused devices and their infringement are in the possession of Defendants.

38.     Defendants also indirectly infringe the '488 patent.  Defendants are aware of the '488 patent at least from the date of this Complaint.  Additionally, on information and belief, Defendants were aware of the '488 patent before the date of this Complaint, including without limitation through Defendants' knowledge of Immersion and Immersion's disclosure of its

patents on its website (formerly located at http://www.immersion.com/haptics-technology/patents/index.html and currently located at http://www.immersion.com/legal/#patents). For example, Immersion's website specifically lists the '488 patent. Additionally, on information and belief, the relevance of Immersion's leading portfolio of haptic patents is well-known to Defendants. *See, e.g.*, http://www.benzinga.com/analyst-ratings/analyst-color/13/08/3816746/immersion-others-could-get-a-boost-when-haptics-market-r ("When it comes to haptics, Immersion is usually the first company that comes to mind."). Defendants knew that the Apple iPhone 6s and Apple iPhone 6s Plus infringed the '488 patent, or at a minimum believed there was a high probability that the Apple iPhone 6s and Apple iPhone 6s Plus were covered by the '488 patent, but willfully blinded themselves to Immersion's patent and the infringing nature of the Apple iPhone 6s and Apple iPhone 6s Plus.

39.     Defendants induced and are actively inducing infringement of the '488 patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting others to directly make, use, offer for sale, sell, and/or import within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '488 patent, including without limitation the Apple iPhone 6s and Apple iPhone 6s Plus. For example, Defendant Apple provides directions, instruction manuals, guides, and/or other materials that encourage and facilitate infringing use by others. *See, e.g.*, http://www.apple.com/iphone-6s/3d-touch/; http://www.apple.com/iphone-6s/technology/; http://help.apple.com/iphone/9/. Defendant AT&T similarly provides directions, instruction manuals, guides, and/or other materials that encourage and facilitate infringing use by others. *See, e.g.*, http://www.att.com/wireless/iphone/; https://www.att.com/cellphones/iphone/iphone-6s.html; http://www.att.com/esupport/iphonefaqs.jsp. The Defendants have sold

and are selling these products with the knowledge and intent that customers who buy the products will use the products for their infringing use and therefore that customers have been and are directly infringing the '488 patent.

40.     Defendants have contributorily infringed and are currently contributorily infringing the '488 patent, in violation of 35 U.S.C. § 271(c), by, among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products or components of products which constitute a material part of the '488 patent, knowing that such products and/or components are especially made or especially adapted for use in the infringement of the '488 patent, and not staple articles or commodities of commerce suitable for substantial noninfringing use.

41.     Defendants' infringement of the '488 patent has been and continues to be willful and deliberate.  Despite knowledge of the '488 patent, Defendants have acted and are acting despite an objectively high likelihood that their actions constitute patent infringement.  This objective risk was and is known to the Defendants, and is also so obvious that it should have been known to the Defendants.

42.     As a direct and proximate result of Defendants' infringement of the '488 patent, Immersion has suffered and will continue to suffer irreparable injury for which there is no adequate remedy at law.  Immersion has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## THIRD CLAIM FOR RELIEF FOR PATENT INFRINGEMENT

### (U.S. Patent No. 8,581,710)

43.     Immersion incorporates by reference paragraphs 1 through 20 as if set forth here in full.

44.     Immersion is the owner of the entire right, title, and interest in and to U.S. Patent No. 8,581,710 (the "'710 patent"), entitled "Systems and Methods for Haptic Confirmation of Commands," which was duly issued on Nov. 12, 2013.  A copy of the '710 patent is attached as Exhibit C.

45.     The '710 patent, in general, describes advances in providing haptic feedback in certain mobile electronic devices such as mobile phones that have, among other things, a touchscreen and an actuator.  The '710 patent teaches, among other things, systems and methods in which the mobile electronic device receives user input via the touchscreen.  The mobile electronic device generates an actuator signal to the actuator to output a first haptic effect if the user input is recognized and a command is determined, confirming receipt of the command. Otherwise, the mobile electronic device generates an actuator signal to the actuator to output a second haptic effect.  The second haptic effect may indicate that the user input is unrecognized or that a corresponding command was not found.  Further details of the invention are described in the specification and the claims.

46.     Defendants have infringed and are currently infringing the '710 patent, in violation of 35 U.S.C. § 271, by, among other things, making, using, offering for sale, selling, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '710 patent, including without limitation the Apple iPhone 6s and Apple iPhone 6s Plus.

47.     Based on the information presently available to it, Immersion alleges that at least the following apparatuses, products, devices, processes, methods, acts, or other instrumentalities infringe or are covered by claims of the '710 patent:  the Apple iPhone 6s and Apple iPhone 6s Plus.   Immersion makes this preliminary identification of infringing apparatuses, products,

devices, processes, methods, acts, or other instrumentalities without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise.

48.     Apple, AT&T, and their customers directly infringe the '710 patent using the Apple iPhone 6s and Apple iPhone 6s Plus.  For example, when a user of the accused devices attempts to access the "Quick Actions" associated with an application by applying pressure on the touchscreen, a first haptic effect will be output if the application supports "Quick Actions." Otherwise, a second haptic effect will be output to the housing of the device, indicating that the application does not support "Quick Actions."  Additional details relating to the accused devices and their infringement are in the possession of Defendants.

49.     Defendants also indirectly infringe the '710 patent.  Defendants are aware of the '710 patent at least from the date of this Complaint.  Additionally, on information and belief, Defendants were aware of the '710 patent before the date of this Complaint, including without limitation through Defendants' knowledge of Immersion and Immersion's disclosure of its patents on its website (formerly located at http://www.immersion.com/haptics-technology/patents/index.html and currently located at http://www.immersion.com/legal/#patents).  For example, Immersion's website specifically lists the '710 patent.  Additionally, on information and belief, the relevance of Immersion's leading portfolio of haptic patents is well-known to Defendants.  *See, e.g.*, http://www.benzinga.com/analyst-ratings/analyst-color/13/08/3816746/immersion-others-could-get-a-boost-when-haptics-market-r  ("When it comes to haptics, Immersion is usually the first company that comes to mind.").  Defendants knew that the Apple iPhone 6s and Apple iPhone 6s Plus infringed the '710 patent, or at a

minimum believed there was a high probability that the Apple iPhone 6s and Apple iPhone 6s Plus were covered by the '710 patent, but willfully blinded themselves to Immersion's patent and the infringing nature of the Apple iPhone 6s and Apple iPhone 6s Plus.

50.     Defendants induced and are actively inducing infringement of the '710 patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting others to directly make, use, offer for sale, sell, and/or import within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '710 patent, including without limitation the Apple iPhone 6s and Apple iPhone 6s Plus.  For example, Defendant Apple provides directions, instruction manuals, guides, and/or other materials that encourage and facilitate infringing use by others.  *See, e.g.*, http://www.apple.com/iphone-6s/3d-touch/; http://www.apple.com/iphone-6s/technology/; http://help.apple.com/iphone/9/.  Defendant AT&T similarly provides directions, instruction manuals, guides, and/or other materials that encourage and facilitate infringing use by others.  *See, e.g.*, http://www.att.com/wireless/iphone/; https://www.att.com/cellphones/iphone/iphone-6s.html; http://www.att.com/esupport/iphonefaqs.jsp.  The Defendants have sold and are selling these products with the knowledge and intent that customers who buy the products will use the products for their infringing use and therefore that customers have been and are directly infringing the '710 patent.

51.     Defendants have contributorily infringed and are currently contributorily infringing the '710 patent, in violation of 35 U.S.C. § 271(c), by, among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products or components of products which constitute a material part of the '710 patent, knowing that such products and/or components are especially made or

especially adapted for use in the infringement of the '710 patent, and not staple articles or commodities of commerce suitable for substantial noninfringing use.

52.     Defendants' infringement of the '710 patent has been and continues to be willful and deliberate.  Despite knowledge of the '710 patent, Defendants have acted and are acting despite an objectively high likelihood that their actions constitute patent infringement.  This objective risk was and is known to the Defendants, and is also so obvious that it should have been known to the Defendants.

53.     As a direct and proximate result of Defendants' infringement of the '710 patent, Immersion has suffered and will continue to suffer irreparable injury for which there is no adequate remedy at law.  Immersion has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## FOURTH CLAIM FOR RELIEF FOR PATENT INFRINGEMENT

## (AGAINST DEFENDANT APPLE)

### (U.S. Patent No. 7,336,260)

54.     Immersion incorporates by reference paragraphs 1 through 20 as if set forth here in full.

55.     Immersion is the owner of the entire right, title, and interest in and to U.S. Patent No. 7,336,260 (the "'260 patent"), entitled "Method and Apparatus for Providing Tactile Sensations," which was duly issued on Feb. 26, 2008.  A copy of the '260 patent is attached as Exhibit D.

56.     The '260 patent, in general, describes advances in providing haptic feedback in a variety of electronic devices such as mobile phones and laptop computers that, among other things, detect pressures and provide tactile sensations.  The '260 patent teaches, among other

things, systems in which the electronic device detects different levels of pressure on the device and provide tactile sensations in response.  Further details of the invention are described in the specification and the claims.

57.     Apple has infringed and is currently infringing the '260 patent, in violation of 35 U.S.C. § 271, by, among other things, making, using, offering for sale, selling, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '260 patent, including without limitation the Apple MacBook, Apple MacBook Pro 13-inch, and Apple MacBook Pro 15-inch.

58.     Based on the information presently available to it, Immersion alleges that at least the following apparatuses, products, devices, processes, methods, acts, or other instrumentalities infringe or are covered by claims of the '260 patent:  the Apple MacBook, Apple MacBook Pro 13-inch, and Apple MacBook Pro 15-inch.  Immersion makes this preliminary identification of infringing apparatuses, products, devices, processes, methods, acts, or other instrumentalities without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise.

59.     Apple and its customers directly infringe the '260 patent using the Apple MacBook, Apple MacBook Pro 13-inch, and Apple MacBook Pro 15-inch.  The accused devices include a Force Touch trackpad.  The Force Touch trackpad is capable of detecting three or more different pressure levels associated with a finger touching the trackpad, and the actuator connected to the Force Touch trackpad can provide tactile sensations based on the three or more different measured pressure levels.

60.     Apple also indirectly infringes claims of the '260 patent.  Apple is aware of the '260 patent at least from the date of this Complaint.  Additionally, on information and belief, Apple was aware of the '260 patent before the date of this Complaint, including without limitation through Apple's knowledge of Immersion, and Immersion's disclosure of its patents on its website (formerly located at http://www.immersion.com/haptics-technology/patents/index.html and currently located at http://www.immersion.com/legal/#patents).  For example, Immersion's website specifically lists the '260 patent.  Additionally, on information and belief, the relevance of Immersion's leading portfolio of haptic patents is well-known to Apple.  *See, e.g.*, http://www.benzinga.com/analyst-ratings/analyst-color/13/08/3816746/immersion-others-could-get-a-boost-when-haptics-market-r   ("When it comes to haptics, Immersion is usually the first company that comes to mind.").  Apple knew that the Apple MacBook, Apple MacBook Pro 13-inch, and Apple MacBook Pro 15-inch infringed the '260 patent, or at a minimum believed there was a high probability that the Apple MacBook, Apple MacBook Pro 13-inch, and Apple MacBook Pro 15-inch were covered by the '260 patent, but willfully blinded itself to Immersion's patent and the infringing nature of the Apple MacBook, Apple MacBook Pro 13-inch, and Apple MacBook Pro 15-inch.

61.     Apple has induced and is currently actively inducing infringement of the '260 patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting others to directly make, use, offer for sale, sell, and/or import within this judicial district and elsewhere in the United States, without license or authority, products and/or processes falling within the scope of one or more claims of the '260 patent, including without limitation the Apple MacBook, Apple MacBook Pro 13-inch, and Apple MacBook Pro 15-inch. For example, Apple provides directions, instruction manuals, guides, and/or other materials that

encourage and facilitate infringing use by others.  *See, e.g.,* http://www.apple.com/macbook/; http://www.apple.com/macbook-pro/.   Apple has sold and is selling these products with the knowledge and intent that customers who buy the products will use the products for their infringing use and therefore that customers have been and are directly infringing the '260 patent.

62.     Apple has contributorily infringed and is currently contributorily infringing the '260 patent, in violation of 35 U.S.C. § 271(c), by, among other things, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products or components of products which constitute a material part of the '260 patent, knowing that such products and/or components are especially made or especially adapted for use in the infringement of the '260 patent, and not staple articles or commodities of commerce suitable for substantial noninfringing use.

63.     Apple's infringement of the '260 patent has been and continues to be willful and deliberate.  Despite knowledge of the '260 patent, Apple has acted and is acting despite an objectively high likelihood that its actions constitute patent infringement.  This objective risk was and is known to Apple, and is also so obvious that it should have been known to Apple.

64.     As a direct and proximate result of Apple's infringement of the '260 patent, Immersion has suffered and will continue to suffer irreparable injury for which there is no adequate remedy at law.  Immersion has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## **PRAYER FOR RELIEF**

WHEREFORE, Immersion prays for judgment as follows:

A.      That U.S. Patent Nos. 8,749,507; 7,808,488; 8,581,710; and 7,336,260 (collectively, the "Patents-In-Suit") are valid and enforceable;

B. That Apple has directly infringed the Patents-In-Suit;

C. That AT&T has directly infringed U.S. Patent Nos. 8,749,507; 7,808,488; and 8,581,710;

D. That Apple has induced the infringement of the Patents-In-Suit;

E. That AT&T has induced the infringement of U.S. Patent Nos. 8,749,507; 7,808,488; and 8,581,710;

F. That Apple has contributorily infringed the Patents-In-Suit;

G. That AT&T has contributorily infringed U.S. Patent Nos. 8,749,507; 7,808,488; and 8,581,710;

H. That Apple and its subsidiaries, parents, officers, directors, agents, servants, employees, affiliates, attorneys, and all others in active concert or participation with any of the foregoing be preliminarily and permanently enjoined from further acts of infringement of the Patents-In-Suit;

I. That AT&T and its subsidiaries, parents, officers, directors, agents, servants, employees, affiliates, attorneys, and all others in active concert or participation with any of the foregoing be preliminarily and permanently enjoined from further acts of infringement of U.S. Patent Nos. 8,749,507; 7,808,488; and 8,581,710;

J. That Defendants be ordered to pay compensatory damages to Plaintiff, together with pre and post judgment interest;

K. That Defendants be ordered to provide an accounting;

L. That Defendants be ordered to pay supplemental damages to Plaintiff, and pre and post judgment interest thereon;

M. That Defendants be ordered to pay Plaintiff's costs;

N.      That the infringement by Defendants be adjudged willful;

O.      That the damages be enhanced under 35 U.S.C. § 284 to three times the amount found or measured;

P.      That this be adjudged an exceptional case and that Plaintiff be awarded their attorneys' fees, costs, and expenses in this action; and

Q.      That Plaintiff be awarded such other and further relief as the Court may deem appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Immersion hereby demands trial by jury on all issues.


Dated: May 5, 2016                                Respectfully submitted,

Of Counsel:                                       FARNAN LLP

Morgan Chu                                        /s/ *Brian Farnan*
Richard M. Birnholz                               Brian E. Farnan (Bar No. 4089)
Jason G. Sheasby                                  Michael J. Farnan (Bar No. 5165)
IRELL & MANELLA LLP                               919 North Market Street
1800 Avenue of the Stars, Suite 900               12th Floor
Los Angeles, CA 90067                             Wilmington, DE 19801
Phone: (310) 277-1010                             (302) 777-0300
Fax: (310) 203-7199                               (302) 777-0301
mchu@irell.com                                    bfarnan@farnanlaw.com
rbirnholz@irell.com                               mfarnan@farnanlaw.com
jsheasby@irell.com

Lisa Glasser
Babak Redjaian
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Phone: (949) 760-0991
Fax: (949) 760-5200
lglasser@irell.com
bredjaian@irell.com

*Attorneys for Plaintiff Immersion Corporation*